IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS LATINO, | No. 2:11-cv-2244-CMK |
| Plaintiff, | |
| vs. | <u>MEMORANDUM OPINION AND ORDER</u> |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. <u>See</u> 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 22) and defendant's cross-motion for summary judgment (Doc. 23). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on November 12, 2008, alleging an amended onset of disability on November 12, 2008, due to back injury and pain (Certified administrative record ("CAR") 29, 74, 140-47, 173-74). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on June 10, 2010, before Administrative Law Judge ("ALJ") Sara A. Gillis. In a July 19, 2010, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential

1. The claimant has not engaged in substantial gainful activity since November 12, 2008, the alleged onset date (20 CFR 416.971 *et seq*).

2. The claimant has the following severe impairments: disc protrusions of the thoracic spine and disc desiccation of the lumbar spine with right-sided radiculopathy (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except needs a sit/stand option at will and limited to occasional bending and stooping.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on April 20, 1970 and was 38 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.964).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 12, 2008, the date the application was filed (20 CFR 416.920(g)).

(CAR 9-16). After the Appeals Council declined review on June 17, 2011, this appeal followed.

/ / /

---

evaluation process proceeds to step five. Id.

3

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

Plaintiff argues the ALJ erred in two ways.  First, plaintiff contends the ALJ erred in finding plaintiff did not meet Listing 1.04.  Second, plaintiff contends the ALJ erred in relying on the vocational expert's testimony in response to an incomplete hypothetical.

### A.      Listing 1.04

At step three of the sequential evaluation, the ALJ must assess whether the claimant has an impairment or combination of impairments that meets or equals an impairment

listed in the Appendix to the federal regulations.  20 C.F.R. Part 404, Subpart P, App. 1.  The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing any gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." Lester, 81 F.3d at 828; see also 20 C.F.R. § 404.1520(d).  The listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary." Sullivan v. Zebley, 493 U.S. 521, 532 (1990).  The burden is on the claimant to establish a prima facie case of disability under the listings.  See Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002).  To "meet" a listed impairment, the claimant must establish that his condition satisfies each element of the listed impairment.  See Zebley, 493 U.S. at 530.  To "equal" a listed impairment, the claimant "must present medical findings equal in severity to *all* the criteria" for the listed impairment. Id. at 531.  "A claimant cannot qualify for benefits under the "equivalence" step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Id. (citing SSR 83–19, at 91–92).

Listing 1.04 considers disorders of the spine such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerateive disc disease, facet arthritis, vertebral fracture resulting in compromise of a nerve root (including cauda equine) or the spinal cord."  Paragraph A of this listing, which plaintiff contends applies, requires:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 CFR Part 404, Subpart P, Appendix 1.

/ / /

Plaintiff concedes that he does not actually meet the requirements for Listing 1.04. However, he argues the ALJ erred in failing to comment on the equivalency thereof. He contends that there is medical evidence of lumbar disc disease, supported by MRI findings, that Dr. Portwood's examination revealed limited back flexion, pain in the LS area, positive straight-leg tests on the right, and that his right calf was one inch greater than the left.

Defendant counters that plaintiff failed to meet his burden to produce medical evidence to support a medical equivalence determination, and none of the medical opinions in the record suggest that plaintiff met the high standards for presumptive disability as plaintiff did not have neurological defects.

The ALJ found plaintiff's condition did not meet or equal the listing requirements because "[t]here is no evidence of neurological deficits as set out in 1.04 and the claimant's impairment cannot be found to meet or equal any of the listings." (CAR 11). The ALJ went on to discuss the medical evidence at step four, and found the MRIs from 2008 showed "disc desiccation at L1-2 and also L4-5, L5-S1 with a small disc bulge at L4-5 and at T1-2 but with no nerve root impingement, herniation or stenosis." (CAR 13). The ALJ also noted that in 2009, plaintiff had EMG testing, which "revealed a chronic LS-S1 radiculopathy but with no electrodiagnostic evidence of focal neuropathy or plexopathy in the right lower extremity." (CAR 13). Finally, the ALJ noted that a 2010 MRI "revealed L4-5 small right foraminal disc protrusion mildly impinging on the right exiting L4 nerve root. A thoracic MRI showed T10-11 small broad-based left paracentral disc protrusion mildly narrowing the central canal." (CAR 13). Plaintiff stipulated to the documentary evidence as summarized by ALJ, including that quoted above.

While the ALJ did not set forth specific reasons for his findings at step three that plaintiff's condition did not meet or equal the listing impairment, he did discuss and evaluate all of the medical records and findings in his opinion. See Kennedy v. Colvin, 738 F.3d 1172, 1178 (9th Cir. 2013) (noting that the ALJ is "simply require[d] . . . to discuss and evaluate the

evidence that supports his or her conclusion" at step three but does not have to "do so under the hearing 'Findings'") (quoting Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)).  In addition, an equivalency determination is required where the claimant presents evidence in an attempt to establish equivalence.  See id. (citing Burch v. Barnhart, 400 F.3d 683 (9th cir. 2005)).  There is no indication in this case that plaintiff argued at anytime before the ALJ that his condition could be equal to the listing requirements of 1.04, nor that he produced evidence in support thereof.  The ALJ made the specific finding that plaintiff did not meet Listing 1.04 because there is no evidence of neurological deficits.  He then further evaluated and discussed the medical findings in the record.  Having that evaluation completed under a different heading, at a different step in the evaluation process, where there is no indication that plaintiff argued his condition equaled that of Listing 1.04, does not amount to reversible error.  Especially where, as here, plaintiff does not argue that the ALJ's evaluation of the medical records and findings was somehow erroneous.

### B. Vocational Expert Testimony

At step five of the sequential evaluation, once a claimant establishes he can no longer perform his past relevant work, the burden shifts to the Commissioner to establish the existence of alternative jobs available to the claimant, given the claimant's age, education, and work experience.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988) (citing Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986)).  This burden can be satisfied by either applying the Medical-Vocational Guidelines ("Grids"), if appropriate, or relying on the testimony of a Vocational Expert (VE).  See id.  The testimony of a VE should generally be consistent with the DOT, although neither "trumps" the other if there is a conflict.  See Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).  If there is an inconsistency between the vocational expert's testimony and the job descriptions in the DOT, the ALJ must resolve the conflict.  See id. (citing SSR 00-4p).

///

1 Hypothetical questions posed to a vocational expert must set out all the
2 substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v.
3 Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's
4 limitations, the expert's testimony as to jobs in the national economy the claimant can perform
5 has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While
6 the ALJ may pose to the expert a range of hypothetical questions based on alternate
7 interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's
8 determination must be supported by substantial evidence in the record as a whole.  See Embrey v.
9 Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

10 Here, the ALJ had following exchange as to one of the hypothetical scenarios
11 posed to the VE:

> Q:  Okay, assume a hypothetical individual, same age, education, and work history as the clamant.  And further assume this individual could lift and carry 10 pounds occasionally and frequently during the workday.  Such an individual could stand and walk for six hours in an eight-hour day.  Such an individual could occasionally bend and stoop.  Could such an individual perform any of the claimant's past work?
>
> A: The receptionist work would be within those restrictions, judge.
>
> Q: Okay.  If I added to that hypothetical that such an individual would need to change positions every 15 minutes, could such an individual perform the receptional [phonetic] work?
>
> A: Change positions every 15 minutes, that's a little - - doesn't really give me enough information.  It would probably be problematic in most positions, I think [INAUDIBLE].  To change position every 15 minutes for a minute or sit, stand?
>
> Q: How about one to two minutes at a time?
>
> A: I think a person who is an independent receptionist would be able to, most positions, get up and do something every 15 minutes.
>
> Q: Okay.
>
> A: Not all jobs, but I think a lot of them would.
>
> Q: Okay.

1  A: Stand up and stretch break or a little filing or walk around the office.

2  Q: And if it was a sit-stand option at will, at any time?

3  A: That wouldn't really work for a receptionist generally.

4  Q: Okay. How about other jobs?

5  A: Sit-stand at will?

6  Q: Sit-stand at will at the sedentary level with no - -

7  A: No, than's - -

8  Q: - - with occasional bend and stoop.

9  A: Occasional bend and stoop. No, I can look at semi-skilled with the transferable. Start there.

10 Q: Okay.

11 A: There's not much of the semi-skilled that's a true sit-stand. There may be some counter workers, but [INAUDIBLE] not in a substantive number.

12 Q: Okay.

13 A: [INAUDIBLE] sedentary sit-stand, you have telephone survey worker, 205.367-054, sedentary, SVP 2. I list 4,000, but you wouldn't be able - - you need a headset. Most of them do. You wouldn't be able to do a lot of data entry, to I'd probably emanated [sic] half of them down to about 2,000.

14 Q: Okay.

15 A: Hand packager, you need a adaptive workstation. It's 920.587-018. It says medium SVP 2, 1,500 at the sedentary. Probably eliminate 80 percent, down to about 300 workers. [INAUDIBLE]. Small parts assembly is the same way. 706.684-022, sedentary, SVP 2, 17,000. Again, I'd eliminate 80 percent. They'd need an adaptive workstation, so down to about 3,600, 3,400, I guess it is.

16 Q: Okay.

17 A: I think that does it. It's doing the same thing under semi-skilled clerical.

25 (CAR 65-68).

26 / / /

9

Plaintiff contends this hypothetical is incomplete as it does not include all of his limitations, specifically his need to move about for 10 minutes at a time.  When counsel asked the VE if someone with that limitation could perform any job, the VE essentially determined such a person would not be productive enough to perform the jobs he identified.  (CAR 70).  Defendant counters that the hypothetical posed to the VE was not incomplete as it included all of the limitations the ALJ found to be supported by the record.

Plaintiff's argument that the hypothetical is incomplete is not supported.  The ALJ found plaintiff had the residual functional capacity (RFC) to perform sedentary work with the exception that he needs to be have a sit/stand option at will and is limited to occasional bending and stooping.  All of these limitations were included in the hypothetical posed to the VE, as set forth above.  Therefore, the hypothetical posed and relied on was sufficient.

To the extent plaintiff's argument is that the RFC did not include all of plaintiff's limitations, that argument is not made and developed.  However, to the extent that is plaintiff's contention, the undersigned finds the RFC set forth above is sufficiently supported by the record as a whole.  The medical opinions in the record, which plaintiff stipulated are adequately summarized in the ALJ's opinion, support the finding that plaintiff is capable of sedentary work so long as he can change positions.  Specifically, the ALJ accepted plaintiff's treating physicians' opinions that he can lift 10-15 pounds, with no frequent bending or stooping, and changing positions as needed.  Therefore, the limitation set forth in the RFC, that plaintiff needs a sit/stand option, adequately accounts for Dr. Portwood's opinion that plaintiff would need to be able to change positions.

As the RFC is adequately supported by the record, and the hypothetical includes all of the limitations set forth in the RFC, the undersigned finds the hypothetical relied on the ALJ to be sufficient and supported by the record as a whole.

/ / /

/ / /

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 22) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 23) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  October 21, 2015

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE